**EXHIBIT 2**



IN THE DISTRICT COURT OF CLEVELAND COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| TREVA BACY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CJ-2018- 1493 |
| | ) |
| CHICKASAW NATION INDUSTRIES, INC, | ) |
| An Oklahoma Corporation; CNI FEDERAL, | ) STATE OF OKLAHOMA ⎫ |
| SERVICES, LLC, an Oklahoma Limited | ) CLEVELAND COUNTY ⎭ S.S. |
| Liability Company; SANDY LAMINACK, | ) FILED |
| individually; | ) |
| | ) NOV 19 2018 |
| Defendants. | ) |

In the office of the
Court Clerk MARILYN WILLIAMS

## PETITION

**COMES NOW** the Plaintiff, Treva Bacy, ("Plaintiff"), by and through her attorney of record David J. Batton, and hereby submits the following Causes of Actions and or Claims for Relief against Defendants, ("Defendants") and hereby states and alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is proper as the amount in controversy exceeds $10,000.00

2. This action arises under 42 U.S.C. §§ 2000e, et seq., Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA) and the laws of the State of Oklahoma.

3. Declaratory and equitable relief is sought pursuant to 28 U.S.C. §2201, §2202, 42 U.S.C. §§ 2000e, et seq., Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA") and the laws of the State of Oklahoma. Compensatory damages are available under 42 U.S.C. §§ 2000e, et seq., and the supplemental state claims.

1

4 .Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 2000e, et seq and Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA")

5. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the District Court for Cleveland County because the Defendants Chickasaw Nation Industries, Inc., and CNI Federal Services, LLC, and are headquartered and conduct business in Cleveland County and part of the actions herein arose in this judicial district.

## PARTIES AND STATUTORY PREREQUISITES

6. Ms. Bacy was at all times hereinafter mentioned, domiciled in and a citizen of the State of Oklahoma, and is a black female over the age of forty (40) years. Ms. Bacy is presently domiciled in and a resident of Oklahoma County, Oklahoma.

7. Defendant Chickasaw Nation Industries, Inc. ("CNI") is a federally chartered corporation headquartered in Norman, Oklahoma, and is engaged in multiple lines of business which it owns and controls, including CNI Federal Services, LLC. CNI does business within Cleveland County. Defendant CNI Federal Services, LLC ("CNIFS") is a wholly-owned subsidiary of CNI. CNIFS is headquartered in Norman, Oklahoma and provides aviation related professional services in conjunction with CNI to the FAA's facilities in Oklahoma City. Ms. Bacy was employed during the relevant periods by CNIFS. Defendants CNI and CNIFS are employers within the meaning of Title VII, and the ADEA, and are located within the jurisdiction of this Court.

8. In conformance with statutory prerequisites, Ms. Bacy submitted her intake questionnaire and pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC") on or about March 18, 2018. The EEOC subsequently issued a Right to Sue letter, which was issued on or about August 20, 2018. Ms. Bacy has therefore timely filed

this action within the statutory time period. The EEOC has indicated that Ms. Earles may proceed with her civil action.

## FACTUAL ALLEGATIONS

9. Each Defendant is engaged in interstate commerce or activities affecting interstate commerce, and has had twenty (20) or more employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year; and/or is a federal agency specifically subject to the prohibition against race and age discrimination set forth in Title VII and the ADEA.

10. Defendants CNI and CNIFS are covered employers under Title VII and the ADEA as they conduct business in the State of Oklahoma and are employers with stated policies of equal employment opportunities. In additions Defendants CNI and CNIFS are contractors of federal government agencies and are contractually bound to provide protections under Title VII and the ADEA to qualify for government contracts.

11. Ms. Bacy was 59 years of age at the time of her termination from employment which was effective October 13, 2017. Ms. Bacy had been a contract employee for the Federal Aviation Administration (FAA) since September 1985. Ms. Bacy was a Remote Pilot Operator-Academy Team Leader ("RPO Team Leader").

12. Ms. Bacy was a supervisor and trainer prior to Defendants CNI and CNIFS taking over the contract services had never been disciplined and was generally held in high regard. Ms. Bacy was always rehired by each successive contracting employer. Defendants CNI and CNFS took over contracting services providing services to the FAA on or about September 2015.

13. Ms. Bacy was well-qualified to perform her assigned duties based upon her extensive work history and expertise and stellar work performance.

3

14. Prior to Defendants CNI and CNIFS assuming the contract for the FAA, Defendant Sandy Laminack ("Sandy") was hired as a Supervisor, she has since that time created a hostile environment by lashing out in screaming matches, and concluding with unmerited written ups, and firing of several African Americans employees. White employee were not treated in such a manner.

15. As an RPO Team Leader, and having worked for the FAA for more than 30 years, noticing the behavior, I started by reading the CNI Policy and Procedures Handbook to see what steps I was responsible for taking in reporting Sandy's disturbing behavior of bullying, screaming, and creating of a hostile environment in the workplace against African American employees. I made several calls to the CNI/CNIFS Ethics Hotline, to report the incidents. No action was ever taken nor was I ever notified of that the complaints would be investigated.

16. On or about October 11, 2017, Sandy came upstairs and gave Connie 'Conrad" Ennis, an African American male, a write-up for the sector Plaintiff was working on. Plaintiff was running with a new employee named Camille Wade, an African American female. Plaintiff was helping Camille through the run, instructing her on the procedures (What to do and say). Released Aircrafts, must be called in, and Plaintiff as part of her instructions made sure that she did so. Camille Wade subsequently received a write-up concerning three aircraft, and what Sandy said that she failed to do. Camille Wade had done what she was supposed to do, and Plaintiff wrote that on the write-up sheet, that only had three check marks, that were supposed to be the write-ups.

17. Plaintiff attempted to contact the other instructor to confirm that Camille Wade had complied with all instructions. Plaintiff took the information to Sandy's office who was there with other RPO's who were all white. Sandy, a white woman, created a scene, by starting to yell

4

at Plaintiff, saying, "stop screaming at me Treva!" even though Plaintiff never raised her voice. Plaintiff did inform Sandy that it appeared that she had intentionally set this situation up for the Instructors to do a write-up.

18.     Plaintiff proceeded to walk out of the office, and Sandy started yelling her name out loud. The other RPO's all left the room. Sandy kept screaming, Plaintiff's name in a loud and hostile, threating voice. Plaintiff turned around and went back into the office, and asked about the problem Sandy was having. Sandy asked Plaintiff to repeat herself. Plaintiff again stated that Camille had successfully accomplished all her procedures. Sandy again started screaming, yelling, and making false statements, such as "Quit hollering at me, Treva!" and "Quit screaming at me, Treva!" while she was holding a phone receiver up in the air, in her hand, as though she was going to hit me with it. This was not the first time she exhibited such behaviors to African American employees. Sandy would not create such a scene with white employees.

19. Sandy immediately demanded my badge and headset even though she knew Plaintiff had a final shift that was starting Plaintiff was responsible. Sandy called Nathan Jones a BRAM supervisor to assist in taking my badge and headset. Neither a HR representative nor a project manager were present which would have been the proper procedure. Plaintiff was sent home on suspension.

20. Previously, Plaintiff was having a conversation with other African-American employees about the North Carolina incident where a white police officer wrongfully killed a black motorist during a traffic stop. Sandy hearing the conversation, loudly interjected by stating "If the police ask me to throw my hands up, I would throw my hands up, because I'm not a drug dealer or a gang banger." This comment caused an emotional disturbance in the office, amongst those who heard her racially motivated, and stereotypical comment some white employees

5

agreeing in a loud manner while Connie Ennis, Alania Haney, nor Plaintiff, all black employees never responded, but remained silent. This conduct of Sandy was a routine example of the harassing and disparaging conduct in the workplace against African Americans.

21. During the time that CNI and CNIFS managed the contract, Sandy and or others were allowed to regularly harass and disparage black employees. An Aferican American woman, AH was only given one chance to pass her certification and was terminated when she did not pass. Yet a white employee BQ was at the same proximate time given 3 chances to pass and was not terminated.

22. During the time of CNI and CNFS operations under the contract Plaintiff noticed older employees such as herself were being treated in a hostile manner and regularly threatened with discipline or other acts of hostility that were not impose upon newer and younger employees not in the protected age category.

23. Plaintiff prior to her termination had filed a number of complaints that involved her or other employees that were being harassed on bases of race or age. Sandy, CNI and CNFI were aware of the complaints being made and based the decision to terminate Plaintiff's employment due to her involvement in protected activity.

24. At all material times, Defendants CNI and CNIFS intentionally failed to properly train and or supervise Sandy and or others to appropriately and proportionately respond to purported claims of racially based discrimination and or abusive treatment and or creation of a hostile work environment and or allowing or not prohibiting retaliation against such employees identifying such activities and or whistleblowing of improper or illegal activities of employees or elected officials.

25. Defendants CNI and CNIFS developed and or maintained policies and customs using deliberate indifference to the statutory and constitutional rights of persons employed by Defendants which caused the violation Plaintiffs rights. Defendants, knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiffs' statutory rights, failed to instruct, supervise, control, and discipline on a continuing basis its employees, including Sandy, and her duties to refrain from:

    a. unlawfully and maliciously harassing an minority (black) employee who was acting in accordance with their constitutional and statutory rights, privileges, and immunity including the policies of the FAA;

    b. unlawfully and maliciously creating accusations of wrongdoing, discipline, retaliating against a African American employee or prohibiting free association of the other white employees to associate with black employees that did not otherwise previously exist until CNI and CNIFS took over the FAA contract. Allowing false allegations of wrongdoing that was not substantially supported to be lodged against an employee who was acting in accordance with their constitutional and statutory rights, privileges, and immunities to associate with minority or white employees;

    c. unlawfully and maliciously creating false or unsupported accusations of threating employees who observed offensive behaviors or creating an oppressive secret system of not disclosing complaints to allow the supervisors to continue their offensive behaviors;

    d. otherwise depriving Plaintiff of her constitutional and statutory rights, privileges and immunities; to be free from racially motivated discipline or false accusations and being wrongfully terminated from her lengthy employment; and,

    e. allowing and encouraging individual supervisors and or white employees of Defendants CNI and CNIFS to believe and act as if such individuals are not subject to the same laws and are immune from discipline or their actions are always justified regardless of the lack of reasonableness; and or such actions will be protected by white supervisors.

    f. failure to provide meaningful supervision regarding the actions of Sandy or others and failure to report or take meaningful disciplinary actions against an offending supervising employee; and,

26. Defendants CNI and CNFS had the power and responsibility to prevent or aide in preventing the commission of such wrongs and could have done something to prevent the

wrongs; however, Defendants CNI and CNIFS knowingly, recklessly, and/or with deliberate indifference or callous disregard of Plaintiffs' rights, failed and refused to do so.

27. Defendants CNI and CNIFS directly or indirectly, approved and or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Sandy heretofore described either directly or by omission.

28. At all material times, Defendants CNI and CNIFS failed to properly train or supervise Sandy and or others to properly identify when circumstances require Defendants to properly investigate and evaluate various instances or complaints involving racially motivated discriminatory conduct or harassing conduct before concluding that the complaining employee be terminated.

29. The failure of Defendants CNI and CNIFS to properly train or supervise those chosen to supervise minority employees constitutes a deliberate indifference to the rights of Plaintiff and other minority employees with whom Defendants or their agents come into contact, especially when such supervisors appear to exert unbridled authority over such employees.

30. Plaintiff has suffered immediate and irrevocable harm including but not limited to emotional upheaval and depression, for all pecuniary losses, including, but not limited to, legal and costs expenses incurred; all future legal and cost or loss of income expenses; any and all reasonable attorney's fees, pursuant to Title VII and or ADEA; any and all expert fees, pursuant to Title VII and the ADEA; and compensatory money damages in an amount exceeding $10,000 for mental pain and suffering, inconvenience, loss of enjoyment of life, and mental and/or emotional distress, humiliation and embarrassment, and loss of economic opportunities for which Defendants are liable jointly or severally.

## FIRST CLAIM FOR RELIEF
## 42 U.S.C. §§ 2000e et seq.
## (RACE DISCRIMINATION IN VIOLATION OF TITLE VII)

31. Plaintiff hereby incorporates the preceding paragraphs 1 through 30 as though fully set forth herein and further states as follows against Defendants CNI and CNIFS.

32. By and through, but not limited to, the events described above, Plaintiff's terms and conditions of employment were adversely affected, and a hostile work environment was created, due to the on-going racial discrimination directed towards her.

33. In particular, but not limited to, hostile work environment discrimination due to her race and discipline meted out to the Plaintiff as opposed to similarly situated white employees.

34. By and through, but not limited to, the actions described above, Defendant has violated Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C.§§ 2000e, et seq.

35. As a direct and proximate result of said actions by Defendants CNI and CNIFS, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

36. Defendant's actions were willful and done with reckless indifference to Plaintiff's rights, thus warranting the award of damages to her.

37. Plaintiff has been injured by this racial discrimination, and is entitled to compensatory damages and any other damages allowed under Title VII of the Civil Rights Act of 1964 and 1991.

38. At all times material hereto Defendant CNI and CNIFS were a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a). On information and belief, at all times material hereto Defendants CNI and CNIFS were an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto Defendants CNI and CNIFS were a person engaged in an industry affecting commerce who had 500 or more employees for each working day in each of twenty or more calendar weeks during the years of Plaintiff's employment or the preceding calendar year.

## SECOND CLAIM FOR RELIEF
## (RACE DISCRIMINATION IN VIOLATION OF
## OKLAHOMA ANTI-DISCRIMINATION ACT)

39. Plaintiff hereby incorporates the preceding paragraphs 1 through 38 as though fully set forth herein and further states as follows against Defendants CNI and CNIFS.

40. That Plaintiff is a member of a protected class, to wit: African American (black).

41. That Oklahoma law prohibits racial discrimination and retaliation (as set forth in the OADA, 25 O.S. § 1302, et. seq.), and permits an aggrieved employee to bring a claim against an employer for permitting racially based discrimination, discrimination and retaliation.

42. That Plaintiff was discriminated against and harassed and terminated due to her race and retaliated against during her employment as prohibited by the OADA.

43. That Defendants CNI and CNIFS ratified the acts of its agents and or supervisory employees by failing to take remedial action upon notice by Plaintiff or others of the circumstances showing or giving notice of racial discrimination or by allowing the acts to occur after receiving actual or constructive notice of those acts.

...

44. That the conduct complained of constitutes illegal racially based discrimination and retaliation in violation of the OADA, 25 O.S. § 1302, et. seq.

### THIRD CLAIM FOR RELIEF
### 29 U.S.C. § 621 et seq.
### (AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 ("ADEA")

45. Plaintiff hereby incorporates the preceding paragraphs 1 through 44 as though fully set forth herein and further states as follows against Defendants CNI and CNIFS.

46. A determining factor in the decisions to subject Plaintiff to different terms and conditions of employment and to terminate her without just or appropriate cause was her age 59.

47. CNI and CNIFS had been on a course and policy to remove all older employees as such made more money and cut Defendants' profit margins.

48. Along with being a racial minority, Plaintiff and or others similarly situated were being systematically removed and younger less qualified employees were being hired on a part-time basis to reduce employee costs and increase profits.

49. Defendants CNI and CNIFS adverse actions against Plaintiff in part because of her age violated the ADEA and caused damages to Plaintiff.

50. Defendants' violation of the ADEA was willful and intentional.

51. Plaintiff is entitled to all remedies and relief provided for a violation of the ADEA. Defendants CNI and CNIFS are jointly and severally liable to Ms. Bacy for the harm, damages, and losses caused to her for their violation of the ADEA.

### FOURTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANT SANDY LAMINACK

52. For the Fourth Claim of Plaintiff's Complaint, Plaintiff adopts and re-alleges all paragraphs 1 through 51 as if pled herein and further states and alleges:

53. Defendant Sandy's conduct of constantly harassing Plaintiff and threatening Plaintiff and retaliating against Plaintiff was so extreme and outrageous as to go beyond all bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

54. Defendant Sandy intentionally or recklessly caused severe emotional distress to Plaintiff beyond that which a reasonable person could be expected to endure by Defendant Sandy's actions including posting and discriminating false and fictitious rumors to others and making accusations and retaliating against Plaintiff.

55. As the direct and proximate result of Defendant Sandy's actions, Plaintiff has suffered damages and is entitled to recover actual damages in excess of $10,000.00.

56. Defendant Sandy's unlawful actions were intentional, willful, malicious, and taken in reckless disregard for Plaintiff's rights; therefore, Plaintiff is entitled to punitive damages against Defendant Sandy.

## FOURTH CLAIM FOR RELIEF
## NEGLIGENCE AGAINST DEFENDANTS CNI and CNIFS

57. Paragraphs 1 through 56 are incorporated by reference and Plaintiff re-alleges each allegation set forth above as though fully set forth herein.

58. Defendants CNI and CNIFS are solely responsible for the acts, omissions, neglect committed by its employees or by training, supervision and control of supervisors they employ and tactics utilized, including the amount of, or type of disclipline used in making an employment decision or the proper circumstances to make valid decisions regarding termination of employment or lack of such training, supervision or control.

59. Defendants CNI and CNIFS failed to properly set guidelines, provide supervision, or in any reasonable manner assure that the supervisors they employ will act properly, pursuant to the laws regarding racial discrimination and harassment and to properly investigate or analyze a situation to make such racially motivated or discriminatory actions due not occur or that discipline of employees by supervisors or recommended by supervisors is appropriate. The termination of Plaintiff's long standing employment where she did not have any prior disciplinary actions ever taken against her was inappropriate.

60. As a direct result of CNI and CNIFS's omissions and deficiencies, Plaintiff sustained injury as previously plead.

**WHEREFORE**, Plaintiff, prays for a declaration and judgment that the conduct engaged in by Defendants is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary; liquidated and/or compensatory damages, including emotional distress, mental anguish, and humiliation, in an amount in excess of Ten Thousand Dollars ($10,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law;

reinstatement, or front pay in lieu thereof; an assessment of damages to compensate for any tax consequences of this judgment; prejudgment interest and for any such other legal or equitable relief this Honorable Court deems just and proper.

                                      **Respectfully Submitted,**

*/s/ David J. Batton*
DAVID J. BATTON, OBA# 11750
Law Office of David J. Batton
P.O. Box 1057
Norman, OK  73070-1304
Tele: (405) 310-3432
Fax: (405) 310-2646
dave@dbattonlaw.com
battonlaw@coxinet.net

*Attorney for Plaintiff*
*Treva Bacy*

**ATTORNEY LIEN CLAIMED.**
**JURY TRIAL DEMANDED.**

14