# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TREVA BACY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-19-512-G** |
| | ) | |
| **CHICKASAW NATION** | ) | |
| **INDUSTRIES, INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment (Doc. No. 18) filed by Defendants Chickasaw Nation Industries, Inc. ("CNI") and CNI Federal Services, LLC ("CNIFS"). Plaintiff Treva Bacy has responded in opposition (Doc. No. 33), and Defendants have replied (Doc. No. 34).

Plaintiff initiated this action in November 2018, raising claims against Defendants CNI and CNIFS of race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. Ann. tit. 25, §§ 1101 et seq., age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and negligence. *See* Compl. (Doc. No. 1-2). Plaintiff additionally raised a claim of intentional infliction of emotional distress against supervisor Sandy Laminack but voluntarily dismissed Laminack from the action on September 29, 2019. *See* Doc. No. 17. Defendants CNI and CNIFS now seek summary judgment on Plaintiff's remaining claims. For the reasons outlined below, Defendants' Motion shall be granted in part.

### I.    Federal Rule of Civil Procedure 56

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B).  While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola*

*Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

## II.     Relevant Facts

At the time relevant to this litigation, Plaintiff was employed by Defendant CNIFS, a subsidiary of Defendant CNI.  Compl. ¶ 7; Defs.' Mot. at 8.  CNIFS provides aviation-related professional services to the Federal Aviation Administration's ("FAA") facilities in Oklahoma City, including the employment and management of a workforce of Remote Pilot Operators ("RPOs") at the FAA's Air Traffic Control Academy.  Compl. ¶ 7; Def.'s Mot. at 8; Pl.'s Resp. at 8; Groce Aff. (Doc. No. 18-2) ¶ 2.  In her capacity as an RPO Lead at the Academy, Plaintiff supervised individuals training to become RPOs as they performed computer simulation training activities.  Compl. ¶ 11; *see* Groce Aff. ¶ 4.

Sometime in 2017, Plaintiff was conversing with an RPO, an RPO supervisor, and an RPO trainee about a white police officer killing an African American motorist during a traffic stop in North Carolina.  RPO supervisor Laminack interjected the following comment: "If the police ask me to throw my hands up, I would throw my hands up, because I'm not a drug dealer or a gang banger."  Defs.' Mot. at 13; Pl.'s Resp. at 13; Bacy Dep. (Doc. No. 18-3) 146:18-21; Compl. ¶ 20.

On October 9, 2017, Plaintiff called the CNI Ethics Hotline to complain about Laminack's behavior toward a white male RPO.  Defs.' Mot. at 13; Pl.'s Resp. at 13; Bacy

Dep. 200:7-25, 232:1-15.  The complaint did not concern race or age.  Bacy Dep. 232:1-15.

On October 11, 2017, Plaintiff was training an RPO trainee, Camille Wade.  An instructor issued a Feedback Form pertaining to Wade's performance during the training.  Defs.' Mot. at 14-15; Bacy Dep. 84:19-85:6, 86:13-87:3.  Feedback Forms are issued at the instructor's discretion and contain constructive feedback regarding the performance of the RPO.  Hutton Aff. (Doc. No. 18-6) ¶ 6.  The instructor did not know whom he was evaluating, only that the individual was working in a particular computer lab.  Defs.' Mot. at 14; Pl.'s Resp. at 33.  Plaintiff reviewed the Feedback Form and disagreed with the instructor's negative evaluation of Wade's performance.  Plaintiff walked into Laminack's office and handed her the Feedback Form, believing Laminack disliked Wade and was, in some manner, responsible for Wade being written up.  Bacy Dep. 97:20-98:13, 102:4-17, 106:6-14.  Laminack was on the phone at the time with RPO supervisor Sean Wise, who overheard their conversation.  Bacy Dep. 113:17-19; Wise Statement (Doc. No. 18-8) at 2.  The parties dispute the content and tone of the conversation but agree that the conversation culminated in Laminack directing Plaintiff to hand in her badge and headset and that Plaintiff left the room without complying.  Bacy Dep. 116:3-7.

Later that day, RPO supervisors Nathan Jones and Conrad Ennis notified Plaintiff that she was being suspended pending an investigation.  Bacy Dep. 116:20-117:20.  HR Generalist Wendy Hutton conducted the investigation, during which she spoke separately to Plaintiff, Laminack, Wise, and Ennis regarding the incident.  Hutton Aff. ¶ 5.  In a written statement, Wise wrote that he had heard Plaintiff yell at Laminack regarding the

Feedback Form.   Defs.' Mot. at 15; Pl.'s Resp. at 15; Wise Statement at 2; Hutton Investigation Notes (Doc. No. 18-9) at 2.[1]   Based upon the information she obtained, Hutton determined that Plaintiff had yelled at Laminack and then directly disobeyed Laminack's instruction to hand in her badge and headset.  Hutton Aff. ¶ 7.

Hutton advised Project Manager Ryan Groce that she believed Plaintiff had acted in an insubordinate manner toward Laminack and recommended to Groce that Plaintiff be terminated for insubordination.  *Id.* ¶ 8; Hutton Investigation Notes at 2.  Based upon the information and recommendation provided by Hutton, Groce requested permission to terminate Plaintiff for unprofessional behavior and insubordination.  Groce Email of Oct. 13, 2017 (Doc. No. 18-10) at 2.  Plaintiff was then notified by phone and by letter that she was being terminated for unprofessional and insubordinate behavior.  Termination Letter (Doc. No. 18-11) at 2 ("Following a thorough review, your behavior was found to be unprofessional and insubordinate, which is in violation of CNI's Core Values and Anti-Harassment Policy."); Bacy Dep. 119:15-22.  Plaintiff, who is African American, was 59 years old at the time.  Compl. ¶¶ 6, 11.

### III.    *Plaintiff's Title VII Claims*

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect

---

[1] Plaintiff contends that Wise's written statement regarding the incident and Hutton's investigation notes, Doc. Nos. 18-8, 18-9, are inadmissible hearsay.  *See* Pl.'s Resp. at 15, 17; *see also* Fed. R. Civ. P. 56(c)(2).  The Tenth Circuit has recognized, however, that out-of-court statements do not constitute hearsay if they are "offered to show [the employer's] state of mind in making its employment decisions," rather than "to prove the truth of the matter asserted."  *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1435 (10th Cir. 1993).

to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1).  As an initial matter, there appears to be confusion among the parties regarding which theory or theories of Title VII liability were properly raised in the Complaint.  Defendants interpreted the claim as arising solely under a hostile work environment theory.  *See* Defs.' Mot. at 7, 19-21.  Plaintiff's Response, however, reflects conflation of that theory and theories of disparate treatment and retaliation.

Plaintiff does not reference retaliation in the portion of her Complaint devoted to her Title VII claim.  Instead, she alleges that the "terms and conditions of [her] employment were adversely affected, and a hostile work environment was created, due to the on-going racial discrimination directed towards her."  Compl. ¶ 32.  "In particular," Plaintiff adds, this included "hostile work environment discrimination due to her race and discipline meted out to the Plaintiff as opposed to similarly situated white employees."  *Id.* ¶ 33.  The Court finds that the allegations in the Complaint plausibly implicate Title VII under both hostile work environment and disparate-treatment theories, but not a retaliation theory, and evaluates Plaintiff's claims on that basis.[2]

a. <u>Hostile Work Environment</u>

The unlawful practices of § 2000e-2(a) are "not limited to 'economic' or 'tangible' discrimination."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).  Rather, the statute is "broad enough to protect individuals from working in a discriminatorily hostile

_____

[2] There is no prejudice to Plaintiff in this approach, as Defendants' Motion addresses Title VII disparate treatment, albeit in the context of Plaintiff's OADA claim.  *See* Defs.' Mot. at 22-24.  And, as noted, Plaintiff addresses Title VII disparate treatment in her Response.

or abusive environment." *Bird v. W. Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016) (alteration and internal quotation marks omitted). To prevail on her hostile work environment claim under Title VII, Plaintiff must establish that "(1) [s]he is a member of a protected group; (2) [s]he was subject to unwelcome harassment; (3) the harassment was based on race; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of [Plaintiff's] employment and created an abusive working environment." *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1170 (10th Cir. 2018) (alterations and internal quotation marks omitted). In evaluating the fourth element of a hostile work environment claim, courts consider "all the circumstances including[:] 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[A] few isolated incidents of racial enmity are insufficient to survive summary judgment." *Id.*

To demonstrate racial hostility in her workplace, Plaintiff primarily relies on Laminack's comment regarding the North Carolina police shooting. Defendants argue that Plaintiff's claim fails because it is based solely on one arguably racial comment, rather than pervasive racial harassment. The Court agrees that, while a reasonable factfinder could conclude that Laminack's comment was offensive, this "offensive utterance" does not demonstrate "physically threatening or humiliating" conduct or the level of severity indicative of a Title VII violation. *Id.* (internal quotation marks omitted).

Plaintiff additionally argues that Laminack harassed her by refusing to allow her to attend her daughter's wedding rehearsal dinner and by "selectively enforcing purported workplace rules against her." Pl.'s Resp. at 23. Plaintiff also broadly asserts that Laminack imposed harsher discipline on African-American personnel and "constant[ly] and consistent[ly]" treated Plaintiff as an "inferior human being[]." *Id.* at 13. Plaintiff wholly failed, however, to support these contentions by "citing to particular parts of materials in the record," as required by Federal Rule of Civil Procedure 56(c) and the Court's local rules. Fed. R. Civ. P. 56(c)(1)(A); *see* LCvR 56.1(d), (e) (prescribing that "[e]ach individual statement by the . . . nonmovant . . . shall be followed by citation, *with particularity*, to any evidentiary material that the party presents in support of its position" and that the movant's material facts "may be deemed admitted" if not "specifically controverted" in this manner (emphasis added)); *see* Pl.'s Resp. at 13 (Plaintiff purporting to support her assertion by citing to eight of her ten exhibits in their entirety).

In addition to failing to produce evidence of frequent or severe discriminatory conduct in her workplace, Plaintiff failed to demonstrate a genuine dispute as to whether the terms, conditions, or privileges of Plaintiff's employment were altered by the alleged harassment. *See Payan*, 905 F.3d at 1170. Indeed, Plaintiff failed to cite to any evidence suggesting that Laminack's comment, or any other racially motivated conduct, "unreasonably interfere[d] with [her] work performance." *Trujillo*, 157 F.3d at 1214 (internal quotation marks omitted).

In sum, a reasonable jury could not conclude that Plaintiff's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently

severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (internal quotation marks omitted); *see Morris v. City of Colo. Springs*, 666 F.3d 654, 666 (10th Cir. 2012) ("A plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of . . . sporadic . . . slurs . . . . Instead, there must be a steady barrage of opprobrious . . . comments." (omissions in original) (internal quotation marks omitted)).

b. Disparate Treatment

A plaintiff may establish disparate treatment under Title VII "either by direct evidence of discrimination . . . or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)]." *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013). Here, Plaintiff has presented no "evidence from which the trier of fact may conclude, without inference," that Plaintiff's termination "was undertaken because of [her race]." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 n.4 (10th Cir. 2015) (internal quotation marks omitted); *see, e.g., Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("[A]n explicit, mandatory age requirement was direct evidence of age discrimination."). Accordingly, the *McDonnell Douglas* framework governs this claim. Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of establishing a prima facie case of discrimination. The burden then "shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). "If the defendant does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status

was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.*

To establish a prima facie case of wrongful termination, Plaintiff must demonstrate that: "(1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (internal quotation marks omitted). Establishing the prima facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1223 (10th Cir. 2003) (internal quotation marks omitted). Defendants do not contest, for purposes of their Motion, that Plaintiff has satisfied her burden of establishing a prima facie case. *See* Defs.' Mot at 24.

The burden therefore shifts to Defendants to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *Conroy*, 707 F.3d at 1171. At this stage, Defendants are required only to "explain [their] actions against [Plaintiff] in terms that are not facially prohibited by Title VII." *EEOC. v. Flasher Co.*, 986 F.2d 1312, 1317 (10th Cir. 1992). Defendants need not persuade the Court "that [they were] actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To this end, Defendants state that Plaintiff was discharged for unprofessional behavior and insubordination. *See* Defs.' Mot. at 16, 25; Hutton Aff. ¶¶ 4-8; Hutton Investigation Notes at 2; Groce Email of Oct. 13, 2017, at 2; Termination Letter at 2. Because Defendants' explanation is not "facially prohibited by Title VII," the Court concludes that Defendants have satisfied their burden of articulating a legitimate,

nondiscriminatory reason for terminating Plaintiff's employment. *Flasher*, 986 F.2d at 1317; *see Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (finding that insubordination was "a facially nondiscriminatory reason for firing" the plaintiff); CNI Employee Handbook (Doc. No. 18-5) at 6 (identifying insubordination as misconduct warranting dismissal).

At the third step of the *McDonnell Douglas* framework, the plaintiff is required to "meet [her] ultimate burden of persuading the court by demonstrating the proffered reason is not the true reason," but pretext for race discrimination. *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001). Here, Plaintiff fails to articulate any cognizable argument of pretext[3] or present evidence that casts doubt on Defendants' proffered explanation for Plaintiff's dismissal. In fact, Plaintiff's arguments are devoid of reference to pretext, save for one conclusory, unsupported statement that she has "produced sufficient evidence of pretext by showing the weaknesses, implausibility, inconsistences, incoherencies, or contradictions of CNI's position." Pl.'s Resp. at 27.

"[T]his Court is not required to make arguments on behalf of a party to litigation, especially a represented party." *Buckingham v. Am. Med. Response Ambulance Serv., Inc.*,

---

[3] Though unclear, Plaintiff's Response appears to contemplate that Defendants' rationale for her termination was pretext for retaliation. Pl.'s Resp. at 18, 23-24. As noted, however, Plaintiff did not raise a Title VII retaliation claim in her Complaint. Even assuming she had raised this claim, it would fail for substantially the same reasons as her disparate-treatment claim. Specifically, the independent investigation performed by Hutton and reviewed by Groce is sufficient to break the causal chain between Laminack's purported retaliatory animus and Plaintiff's termination. *See Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 516 (10th Cir. 2015) (applying the subordinate bias doctrine to a Title VII retaliation claim and explaining that, under the doctrine, "an employer can 'break the causal chain' between the biased subordinate's unlawful actions and the adverse employment action by independently investigating the allegations against the employee").

12-cv-02606-CMA-KMT, 2014 WL 349109, at *3 (D. Colo. Jan. 31, 2014) (citing *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1265 n.3 (10th Cir. 2008)).   Nonetheless, the Court has reviewed the evidence in the record and finds it insufficient to establish a genuine dispute as to whether Defendants' rationale was pretextual.

Pretext can generally be established by showing that "the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011) (alteration and internal quotation marks omitted).   Because Plaintiff's claim is predicated on the alleged racial bias of Laminack, rather than that of the final decisionmaker who terminated her employment, the subordinate bias theory of liability applies to Plaintiff's claim.   Under this theory, Plaintiff must "demonstrate a causal relationship between the subordinate's actions and the employment decision." *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 488 (10th Cir. 2006).   A plaintiff cannot recover under this theory unless she "show[s] that the decisionmaker followed the biased recommendation of a subordinate without independently investigating the complaint against the employee." *Id.* at 458 (alteration and internal quotation marks omitted); *see also id.* at 487 ("[T]he issue is whether the biased subordinate's discriminatory . . . actions caused the adverse employment action.").

Plaintiff has presented no evidence that Laminack recommended her discharge. *See* Bacy Dep. 159:2-19.   Rather, the evidence reflects that the recommendation to terminate Plaintiff was made by HR Generalist Wendy Hutton after an investigation and that Project Manager Ryan Groce effectuated the termination only after his review of the investigation.

12

*See* Hutton Investigation Notes at 2; Groce Email of Oct. 13, 2017, at 2; Groce Aff. ¶ 3 (explaining that Groce "was responsible for hiring, firing, and supervising the RPO workforce"); *see also* Bacy Dep. 157:23-158:25 (Plaintiff testifying that she did not know whether the recommendations of Hutton and Groce to discharge Plaintiff were based on race).  Further, the undisputed facts reflect that as part of her investigation, Hutton spoke directly with Plaintiff regarding the incident, in additional to three supervisors with knowledge of the incident.  Hutton Aff. ¶¶ 5, 7; Bacy Dep. 118:7-120:7, 283:4-10.

These facts are determinative under Tenth Circuit precedent.

> [B]ecause a plaintiff must demonstrate that the actions of the biased subordinate caused the employment action, an employer can avoid liability by conducting an independent investigation of the allegations against an employee.  In that event, the employer has taken care not to rely exclusively on the say-so of the biased subordinate, and the causal link is defeated. Indeed, under [Tenth Circuit] precedent, simply asking an employee for his version of events may defeat the inference that an employment decision was racially discriminatory.

*BCI Coca-Cola Bottling Co.*, 450 F.3d at 488 (citation omitted); *see also Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) ("Our relevant inquiry for determining pretext is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue . . . ." (internal quotation marks omitted)).

Thus, the Court finds that Plaintiff has failed to establish a genuine issue of material fact that would preclude summary judgment on Plaintiff's disparate-treatment claim.

IV.    *Plaintiff's Remaining Claims*

Defendants additionally seek summary judgment on Plaintiff's ADEA, OADA, and negligence claims.  Plaintiff's Response, however, failed to address these claims or to counter Defendants' arguments and evidence with specific facts demonstrating a genuine

issue of material fact.  Nevertheless, the Court "may not grant the motion" as to these claims "without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002).

      a.  ADEA Claim

      As with a Title VII disparate-treatment claim, an ADEA claim may be established by either direct or circumstantial evidence.  An ADEA claim based upon circumstantial evidence follows the burden-shifting framework outlined in *McDonnell Douglas*.  *See Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).  To establish a prima facie case of age discrimination under this framework, Plaintiff must show that "1) she is a member of the class protected by the ADEA; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (alteration and internal quotation marks omitted).

      Defendants argue that Plaintiff's ADEA claim fails for lack of direct evidence of age discrimination and lack of circumstantial evidence that age discrimination was "a 'but for' cause of her termination" or that the stated reason was pretext. *Simmons*, 647 F.3d at 949; *see* Defs.' Mot. at 32-34.  As Defendants note, there is no direct evidence of age discrimination.  Insofar as circumstantial proof, Defendants have produced evidence that the stated reason for discharging Plaintiff was unrelated to age, *see* Termination Letter at 2, and that her claim of age bias is undermined by her admissions that "many young . . .

employees [had] been similarly mistreated by Laminack" and that Plaintiff has no reason to believe that Hutton is biased against older employees, Defs.' Mot. at 17 (citing Bacy Dep. 157:23-158-3, 210:19-211:5, 215:17-216:3, 216:17-218:2, 219:5-10, 230:4-14).

In any event, the subordinate bias doctrine that defeats Plaintiff's Title VII disparate-treatment claim on the basis of causation, *see supra* Section III.b, applies equally to her ADEA claim. *See Simmons*, 647 F.3d at 949 (noting that the Tenth Circuit "has applied the subordinate bias doctrine to cases arising under both Title VII and the ADEA" (citations omitted)). Accordingly, even if Plaintiff had demonstrated a genuine dispute as to whether Laminack discriminated against Plaintiff based upon her age, which she has not, the independent investigation preceding Plaintiff's termination would break the causal chain necessary for imputation of liability to CNI and CNIFS.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADEA claim.

### b. OADA Claim

The OADA makes it a discriminatory practice for an employer "to discharge . . . or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race." Okla. Stat. Ann. tit. 25, § 1302(A)(1). This Court has held that "claims under the OADA are evaluated using the same standards as claims under Title VII, and a claim that fails under Title VII will also fail under the OADA." *Cunningham v. Skilled Trade Servs., Inc.*, No. CIV-15-803-D, 2015 WL 6442826, at *3 (W.D. Okla. Oct. 23, 2015). The OADA allows a defending party to "allege any defense that is available under Title VII." *Bennett v.*

*Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015) (internal quotation marks omitted).  Accordingly, Plaintiff's OADA claim for race discrimination fails for the reasons that her Title VII race-discrimination claim fails.  *See supra* Section III and note 3.

       c.  <u>Negligence Theory</u>

       Plaintiff has alleged that Defendants CNI and CNIFS acted negligently by failing "to properly set guidelines, provide supervision, or in any reasonable manner assure that the supervisors they employ will act properly, pursuant to the laws regarding racial discrimination and harassment."  Compl. ¶ 59.

       In their Motion, Defendants cite decisional law addressing negligence as one of "three alternative bases drawn from agency principles for holding an employer liable for [a] hostile work environment."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998); Defs.' Mot. at 34-35.  Under the negligence theory, an employer "may be held liable [under Title VII] for the racially harassing conduct of employees" if "the employer fails to remedy a hostile work environment it knew or should have known about."  *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008) (internal quotation marks omitted).

       The Court notes that Plaintiff identified negligence in her Complaint as a separate claim for relief and that Defendants have moved for summary judgment on "Plaintiff's negligence claim."  Defs.' Mot. at 35; *see* Compl. ¶¶ 57-60.  In the context referenced above, however, negligence is not a separate claim for relief, but merely a theory of agency that supports employer liability for hostile-work-environment claims.  To the extent that

Plaintiff has asserted a state-law negligence claim, the Court declines to exercise supplemental jurisdiction over it.  *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 18) is GRANTED IN PART.  Summary judgment is granted in favor of Defendants on Plaintiff's Title VII, ADEA, and OADA claims.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim.  A separate judgment shall be entered.

IT IS SO ORDERED this 7th day of May, 2020.

CHARLES B. GOODWIN
United States District Judge